# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANNA BAKER,<br><br>    Defendant. | No. CR14-4088-MWB<br><br>***REPORT AND RECOMMENDATION ON MOTION TO DISMISS*** |

Defendant Anna Baker (Baker) has filed a motion (Doc. No. 29) to dismiss Count 1 of the indictment as against her. Plaintiff (the Government) has filed a resistance (Doc. No. 42). The Honorable Mark W. Bennett, United States District Judge, has referred the motion to me for preparation of a report and recommended disposition. Because the motion has been well-briefed by both sides, I find that oral argument is not necessary and would cause undue delay. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2014, the Grand Jury returned a seventeen-count indictment (Doc. No. 9) naming eight defendants. Baker is charged only with regard to Count 1, which alleges conspiracy to defraud the United States by obstructing or interfering with governmental functions in violation of 18 U.S.C. § 371 (Section 371). The indictment describes a series of events that allegedly took place after Jamal Dean (Dean) shot a Sioux City police officer on April 29, 2013. Basically, the indictment tells the story of Dean's flight and efforts to evade capture after the shooting. Each defendant is alleged to have known that Dean was a fugitive and, despite such alleged knowledge, to have played a

part in assisting his escape while obstructing the efforts of local and federal authorities to capture him. According to the indictment, an Iowa arrest warrant was issued for Dean shortly after the shooting and a variety of local, state and federal law enforcement authorities commenced a manhunt. Doc. No. 9 at 3. The federal authorities are alleged to have included Deputy United States Marshals and Special Agents of the Bureau of Alcohol Tobacco Firearms and Explosives. *Id.* The indictment states that Dean was apprehended in Texas on May 5, 2013, while accompanied by two of the other defendants. *Id.* at 4.

The indictment contains the following allegations that relate to Baker:

10. On April, 29, 2013, LEVON VARNE DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, all learned federal authorities were searching for Jamal Dean before they completed their interaction with Jamal Dean on or about April 29, 2013.

∗∗∗

THE OBJECTS OF THE CONSPIRACY

13. From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events

of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

THE MANNER AND MEANS OF THE CONSPIRACY

14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

OVERT ACTS

17. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Iowa and elsewhere:

**Before Arrest of Jamal Dean**

***

O. On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR

HERNADEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

R. On or about April 30, 2013, ANNA BAKER provided Jamal Dean shelter, methamphetamine, and food, while he was on the Winnebago Reservation.

***

**After Arrest of Jamal Dean – False Statements**

CC. On or about May 14, 2013, ANNA BAKER told a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives that no one stayed at her home on or about April 30, 2013, when she knew Jamal Dean had stayed at her residence on or about April 30, 2013.

DD. On or about May 14, 2013, ANNA BAKER told a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives that she had last seen Jamal Dean months ago, when she knew she had seen him just days before on or about April 30, 2013.

***

**After Arrest of Jamal Dean -- Destruction of Evidence**

OO. Between on or about April 29, 2013 and May 14, 2013, ANNA BAKER deleted the contents of her mobile phone including text messages.

*Id*. at 4-13. Thus, the indictment alleges that Baker joined a conspiracy to obstruct the efforts of federal authorities to apprehend Dean, and to investigate his escape, and that she took the following actions in furtherance of the alleged conspiracy: (a) welcomed Dean into her home while knowing he was a fugitive, (b) took part in discussions with

4

Dean and others about what Dean should do next, (c) provided Dean with food, shelter and methamphetamine, (d) lied to a federal agent after Dean was in custody and (e) deleted data from her mobile phone.

## II. BAKER'S MOTION

Baker's motion invokes Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3)(B) which state, in relevant part:

**(b) Pretrial Motions.**

* * *

> **(2) Motions That May Be Made at Any Time.** A motion that the court lacks jurisdiction may be made at any time while the case is pending.
>
> **(3) Motions That Must Be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> * * *
>
> > (B) a defect in the indictment or information, including:
> >
> > * * *
> >
> > (v) failure to state an offense;

Fed. R. Crim. P. 12(b). Baker does not make separate arguments concerning jurisdiction and the indictment's alleged failure to state an offense. Instead, she argues that even if the allegations in the indictment are accepted as true, no violation of Section 371 occurred because (a) actions taken to frustrate efforts to investigate and locate an individual who faces only state charges do not target the United States, and (b) harboring a fugitive does not defraud the United States. Doc. No. 29-1 at 5-10.

5

The Government disagrees. It first notes that a Rule 12 motion is not the criminal law equivalent of motion for summary judgment, meaning Baker cannot use her motion to test the sufficiency of the Government's evidence. Doc. No. 42-1 at 11-14. It then argues that when the allegations of the indictment are accepted as true, Count 1 sets forth a viable claim that Baker violated Section 371. Doc. No. 42-1 at 14-24.

### III. DISCUSSION

#### I. *Rule 12(b)(2) – Does This Court Have Subject Matter Jurisdiction?*

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Here, the Grand Jury returned an indictment that includes, *inter alia*, a count against Baker and others based on an alleged violation of Section 371, a federal criminal statute. *See* Doc. No. 9 at Count 1. I do not construe Baker's motion to argue that this court generally lacks subject matter jurisdiction over charges brought pursuant to Section 371. That argument would go nowhere fast. Instead, Baker argues that the allegations against her, even if true, do not describe a violation of Section 371. In other words, she contends that this court lacks jurisdiction because the indictment does not describe an offense against the laws of the United States. Thus, Baker's Rule 12(b)(2) argument depends on the outcome of her Rule 12(b)(3)(B)(v) arguments. If the indictment states an offense under Section 371, then this court has subject matter jurisdiction over Count 1. If not, then Count 1 must be dismissed as against Baker under both Rule 12(b)(2) and Rule 12(b)(3)(B)(v).

## II. Rule 12(b)(3)(B)(v) – Does Count 1 State An Offense Against Baker?

### A. Applicable Standards

An indictment is normally sufficient unless no reasonable construction can be said to charge the offense. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995). This means an indictment will survive a motion to dismiss "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001). In reviewing the sufficiency of an indictment, the court must accept the Government's allegations as true. *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012).

As the Government points out, a Rule 12 motion may attack the sufficiency of the allegations but not the sufficiency of the *evidence*: "It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363–64 (1956)). Nor do the Rules of Criminal Procedure permit the functional equivalent of a motion for summary judgment, whereby a defendant may test the sufficiency of the Government's evidence in advance of trial. *See, e.g., United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (citing cases); *accord Nabors*, 45 F.3d at 240 ("There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, *see* Fed.R.Civ.P. 56(c), the government has no duty to reveal all of its proof before trial.").

The sufficiency of the evidence may be tested by a motion for acquittal pursuant to Rule 29. *Ferro*, 252 F.3d at 968 (citing *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). However, the first opportunity for such a motion is after the Government rests at trial. Fed. R. Crim. P. 29(a). Thus, at this stage of the case the

Government is not required to show that it will be able to prove a violation of Section 371. The issue, instead, is whether the indictment's allegations against Baker, when accepted as true, state a violation of Section 371.

### B. *Overview of Section 371*

Section 371 reads as follows, in relevant part:

**Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The Government notes that Baker is charged under the second clause of Section 371, which makes it unlawful for "two or more persons [to] conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose" if at least one of those persons commits "any act to effect the object of the conspiracy." The Supreme Court has explained Section 371 as follows:

> Section 371 is the descendent of and bears a strong resemblance to conspiracy laws that have been in the federal statute books since 1867. *See* Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484 (prohibiting conspiracy to "defraud the United States in any manner whatever"). Neither the original 1867 provision nor its subsequent reincarnations were accompanied by any particularly illuminating legislative history. This case has been preceded, however, by decisions of this Court interpreting the scope of the phrase "to defraud … in any manner or for any purpose." In those cases we have stated repeatedly that the fraud covered by the statute "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966), quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910); *see also Glasser v. United States*, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942); *Hammerschmidt v. United States*, 265 U.S. 182,

<blockquote>
188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). We do not reconsider that aspect of the scope of § 371 in this case. Therefore, <u>if petitioners' actions constituted a conspiracy to impair the functioning of the [Rural Electrification Administration], no other form of injury to the Federal Government need be established for the conspiracy to fall under § 371</u>.
</blockquote>

*Tanner v. United States*, 483 U.S. 107, 128 (1987) [emphasis added]. Similarly, the Eighth Circuit Court of Appeals has stated that in order to establish a violation of the second clause of Section 371, "the government must show that [the defendant] conspired 'to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *United States v. Murphy*, 957 F.2d 550, 553 (8th Cir. 1992) (quoting *McNally v. United States*, 483 U.S. 350, 359 n. 8 (1987)). The agreement between the alleged conspirators "need not be express, but rather can be an informal tacit understanding" that "can be proved entirely by circumstantial evidence." *Id.* at 552.

As Baker points out, Section 371 applies only when the United States is the target of the conspiracy. *Tanner,* 483 U.S. at 130 ("The conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly—by the *target* of the conspiracy.") [emphasis in original]. In *Tanner*, the defendants were convicted under Section 371 after conspiring to defraud a private entity – Seminole Electric Cooperative, Inc. (Seminole) – that received financial assistance from the federal government. *Id.* at 128-29. Specifically, defendant Conover, who was employed by Seminole, caused the company to enter into road-construction contracts with a friend – defendant Tanner – that were favorable to Tanner. *Id.* at 111. Conover received certain benefits from Tanner after arranging these favorable contracts. *Id.* at 111-12. As it turns out, Seminole had funded the construction project with a loan guaranteed by the Rural Electrification Administration (REA), a federal agency. *Id.* at 111.

Both defendants appealed their convictions on grounds that a conspiracy to defraud a private entity does not implicate Section 371, even if that entity happens to receive assistance from a federal agency. *Id.* at 129. The Court agreed, rejecting the Government's argument that a private entity that is a "recipient of federal financial assistance and the subject of federal supervision, may itself be treated as 'the United States' for purposes of § 371." *Id.* The Court concluded that the Government's position improperly "substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States or any agency thereof' in § 371." *Id.* at 132. Thus, the convictions were vacated with regard to this theory.[1]

### C. Analysis

Baker raises two arguments as to why the allegations against her in the indictment do not fit the elements of an offense under Section 371: (1) the United States was not the target of the alleged conspiracy and (2) some of her alleged conduct did not "defraud" the United States. I will address these argument separately.

#### 1. Was the United States the Target of the Alleged Conspiracy?

The indictment alleges that shortly after an armed robbery occurred on April 15, 2013, Dean was investigated by state and federal authorities for various offenses, including possession of a firearm and ammunition as a felon. Doc. No. 9 at 3, ¶¶ 4-5. The indictment further alleges that this joint state and federal investigation was still underway on April 24, 2013, when Dean committed a second armed robbery. *Id.*, ¶¶ 5-6. Next, the indictment alleges that a state court arrest warrant for Dean was issued

---

[1] The Court remanded the case for further consideration of a second theory, which was that the defendants conspired to cause Seminole to make false statements to the REA. *Id.* Under that theory, the United States was the target of the conspiracy. *Id.*

on April 24, 2013, and that local and federal law enforcement officers began searching for him at that time.  *Id.,* ¶ 6.

According to the indictment, a second state court arrest warrant for Dean was issued on April 29, 2013, after Dean shot a police officer.  *Id.* at 3-4, ¶¶ 7-8.  At that time, Deputy United States Marshals are alleged to have joined the existing search for Dean, meaning officials from multiple federal agencies (in addition to state and local agencies) were attempting to locate Dean after the shooting.  *Id.* at 4, ¶ 9.  Moreover, and critically, the indictment alleges that on this same date – April 29, 2013 – all of the defendants, including Baker, "learned federal authorities were searching for Jamal Dean."  *Id.*, ¶ 10.

Thus, according to the indictment, when Baker allegedly welcomed Dean into her home on April 30, 2013, participated in discussions about the shooting – and about what Dean should do next – and provided him with food, shelter and methamphetamine,[2] she knew he was wanted by federal authorities.  Moreover, after Dean was taken into custody, Baker allegedly lied to a federal agent and deleted evidence from her phone.  *Id.* at 10, ¶¶ 17(CC), 17(DD), and at 13, ¶ 17(OO).  Finally, other alleged conspirators, possessing the same knowledge about federal involvement, are alleged to have taken other steps to frustrate the manhunt and investigation.  *Id.* at 6-14, ¶ 17.

Accepting these allegations as true, the indictment sufficiently describes a conspiracy that targeted the United States and of which Baker was a co-conspirator. This situation is not akin to the rejected theory in *Tanner,* under which a conspiracy to defraud a private entity was alleged to fall within Section 371 because that entity received some assistance from the federal government.  That theory would be analogous if the investigation and manhunt concerning Dean had been a state or local operation, with only

---

[2] See Doc. No. 9 at 8-9, ¶¶ 17(O) – 17(S).

some behind-the-scenes assistance from federal resources (such as the use of federal funds, databases, etc.).

Here, however, the indictment expressly alleges that Baker and the other defendants knew federal authorities were looking for Dean and that they took actions to frustrate this federal effort. The indictment also alleges that Baker lied to a federal agent, not to a state or local agent who happened to be receiving some support or assistance from a federal agency. The indictment thus describes an alleged conspiracy akin to the Section 371 theory that was approved in *Tanner* (in which the defendants caused Seminole to make false statements to a federal agency).[3]

Of course, it remains to be seen whether the Government can prove the indictment's allegations beyond a reasonable doubt at trial. For purposes of Baker's current motion, however, the indictment describes an alleged conspiracy that targeted the United States within the meaning of Section 371. As such, I must recommend that Baker's motion be denied on this issue.

### 2. *Does Harboring a State Fugitive "Defraud" the United States?*

Baker next argues that her alleged conduct prior to Dean's arrest does not support a Section 371 charge because simply harboring a state fugitive does not amount to "defrauding" the United States. She asks that the indictment be dismissed "insofar as it pertains to her alleged actions before Jamal Dean's arrest." Doc. No. 29-1 at 10.

I do not know what this request really means. Count 1 charges Baker with a single offense under Section 371 and describes alleged conduct that occurred both before and after Dean was arrested. Baker is not charged with one Section 371 violation for conduct before Dean's arrest and a second Section 371 violation for conduct after his

---

[3] *Tanner,* 483 U.S. at 132.

arrest.  If she is asking to have Count 1 dismissed because her alleged pre-arrest conduct, when viewed in isolation, is not sufficient to support a Section 371 charge, that request is baseless.  I must find Count 1 to be sufficient unless no reasonable construction can be said to charge the offense.  *Nabors*, 45 F.3d at 240.  A construction that focuses only on certain allegations, while ignoring others, is not "reasonable."

If, instead, Baker intends to argue that her alleged actions before Dean's arrest are not *relevant* to Count 1, that is an evidentiary argument for trial.  Baker filed a motion to dismiss, not a motion in limine.  So long as Count 1, when read as a whole, can be reasonably construed to state a Section 371 charge against Baker, she is not entitled to the dismissal of that count.

The indictment alleges that Baker not only took steps to assist and conceal Dean before his arrest, but then interfered with a federal investigation after his arrest by lying to a federal agent and destroying evidence.  When read as a whole, these allegations can be reasonably construed to state a violation of Section 371 in that Baker allegedly interfered with or obstructed one of the federal government's lawful functions "by deceit, craft or trickery, or at least by means that are dishonest."  *Murphy*, 957 F.2d at 553. Even if Baker had no legal duty to volunteer information to the United States, a Section 371 charge may be based on affirmative efforts to impede governmental functions by intentionally supplying false information.  *See, e.g., United States v. Ervasti,* 201 F.3d 1029, 1038 (8th Cir. 2000) (defendants falsified forms and made misrepresentations to frustrate the collection of taxes); *United States v. Derezinski*, 945 F.2d 1006, 1011-12 (8th Cir. 1991) (defendant falsified transaction records to conceal the actions of a drug dealer).

In short, Baker's effort to dismiss Count 1 by arguing that her alleged actions before Dean's arrest do not support a Section 371 charge must fail.  When read as a whole and reasonably construed, the indictment's allegations are sufficient to charge

Baker with conspiracy to defraud the United States. I therefore recommend that her motion be denied on this ground, as well.

### IV.     *CONCLUSION AND RECOMMENDATION*

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the motion (Doc. No. 29) by defendant Anna Baker to dismiss Count 1 of the indictment as to her be **denied**.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 29th day of December, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE